IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LORI LEE GARRETT,

    Plaintiff,

v.                                                                Case No. 16-1118-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.


**MEMORANDUM AND ORDER**

Lori Lee Garrett applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on February 22, 2013, and supplemental social security (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3), on February 26, 2013. The Commissioner of Social Security denied her application upon initial review (Dkt. 8, Tr. 103, 108) on April 26 and June 25, 2013, and Garrett sought review by an Administrative Law Judge (ALJ). Following a hearing on August 4, 2014 (Tr. 34-85), the ALJ determined that Garrett was not disabled within the meaning of the Act. (Tr. 18-33). The decision of the Commissioner became final when the Appeals Council declined Garrett's request for review. (Tr. 1-7)

Garrett then filed this appeal, raising only one argument. Garrett contends that the ALJ's conclusions are not supported by substantial evidence. (Dkt. 9, at 6-12). In support of this general argument, Garrett contends that the ALJ should have given

greater weight to her treating rheumatologist, Dr. Cameron Jones. She also contends the ALJ should not have discounted the credibility of her statements as to the subjective level of pain associated with her impairments.

Plaintiff-claimant Garrett was born on July 11, 1964, and has stated that she became disabled beginning May 1, 2006, due to ailments with her back and neck. She alleges that these injuries were caused or aggravated by a car accident in 2000.

Garrett has a high school education. At the hearing, she also reported having a bachelor's degree in biology. (Tr. 46). She has previously worked as a customer service representative and as the manager of inventory and the storeroom for the publications department of an insurance company.

After the evidentiary hearing, ALJ Linda Sybrant concluded that Garrett had severe impairments in cervical spine sprain or strain, chronic low back pain secondary to a small central disc protrusion, and hearing loss in her right ear. However, the ALJ also determined that Garrett's injuries do not meet or exceed any listed impairment, and found that she retained the residual functional capacity (RFC) to perform light work, as that term is defined by Social Security regulations. *See* 20 C.F.R. §§ 404.1567(b) and 461.967(b).

As determined by the ALJ, Garrett can perform light work with the following exceptions. She can lift and carry 25 pounds occasionally and 10 pounds frequently. She cannot lift above her shoulders, and cannot sit, stand or walk for more than 6 hours during the workday. She can occasionally climb stairs and ramps, but never ladders, ropes or scaffolds. She can sometimes—but not repetitively—kneel, crouch, stoop or

bend. She cannot crawl or use dangerous or heavy vibrating machines. She cannot face unprotected heights, extreme cold, or loud noise.

The ALJ determined that, with these limitations, Garrett can still perform her past relevant work as a customer service representative or inventory specialist. Alternatively, she can perform other work in the national economy, including cashier, wire wrapping machine operator, or production assembler.

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Garrett v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C.

3

§ 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether

4

the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

Here, the plaintiff complains that the ALJ erred in relying on the testimony of Dr. Allan Neil Levine, an orthopedic specialist, noting that Dr. Levine did not review records for medical events occurring after 2012. With respect to Dr. Jones, who submitted a medical source statement in July, 2014, Garrett cites authority concluding that that an ALJ may not simply reject the opinion of a treating physician which is rendered by checkbox form. *See Anderson v. Astrue*, 319 Fed. Appx. 712, 722-23 (10th Cir. 2009). Garrett contends that the record supports Dr. Jones's opinion, citing his treatment history (Dkt. 9 at 9), Garrett's own statements (Dkt. 9, at 10), and various third party statements submitted on her behalf. (*Id.* at 11-12).

The court finds no error. Plaintiff did submit, either the morning of or a few days before the ALJ hearing, some third party statements and some additional medical records for the period after 2012, and Dr. Levine did not independently review those records. (Tr. 38). But the plaintiff has failed to point to anything in the records which would show that her back or neck condition became aggravated in the interim. With respect to those impairments — the central element of plaintiff's claim of disability —

5

the most recent imaging of the lumbar spine remained an MRI taken in October, 2003 which showed a "small central disc protrusion at L5-S1 level," but without "any ventral deformity to the thecal sac" and "[n]o other intra-or extradural abnormalities." (Tr. 290).

These records were available for Dr. Levine, who reviewed all available imaging data. (Tr. 41). He determined that the imaging indicated "no evidence of any nerve root or spinal cord compromise." *Id.* The plaintiff's records between 2012 and 2014 appear to mainly involve medical treatment, in particular a heart condition, unrelated to her complaints of neck and spinal pain. (Tr. 369-485, 487-96, 499-503, 506-07). The records indicate that the plaintiff received treatment for this heart condition after reporting chest pain in late 2014. The records discuss this chest pain separately from any impairment of the neck or spine, noting the existence of "Back pain since her motor vehicle accident" under the heading "PAST MEDICAL HISTORY." (Tr. 373).

Following aortic valve replacement surgery for her heart condition, Garrett reported that her "chest pain is improving daily," but also indicated that her "LBP [lower back pain} has worsened since she has not been ambulating and active following surgery." (Tr. 376). This was apparently a temporary condition. The treatment notes for January 26, 2015 indicate that Garrett was "not wanting to change her current pain medicine regimen and believes her back pain will continue to improve with becoming more mobile and ambulating more once discharged." (Tr. 379).

The ALJ's assessment of the objective medical assessment is well-grounded in the record:

> There is no evidence of nerve root compression or impingement. As for a cervical sprain/strain, this condition arose in January 2010 when the claimant had been "doing a lot of lifting of her mother," who had rheumatoid arthritis. The medical evidence contains no agnominal medical imaging of the cervical spine. In January 2010, the claimant exhibited some cervical tenderness, but showed normal motor strength of the cervical spine, no neurological deficit, and no popping or crepitus of the neck. At more recent examinations in 2013, she exhibited no neck or upper back symptoms.

(Tr. at 25) (record citations omitted).

Nothing in the additional, 2012-14 material submitted during or immediately prior to the hearing (and thus unavailable for Dr. Levine's review) supports the conclusion that Garrett's neck or spinal condition worsened as a result of the 2014 heart surgery. The ALJ accurately determined that the best objective evidence for Garrett's relevant impairments were in place prior to Dr. Levine's examination of the record, and that this evidence failed to document impairments to the extent claimed by the plaintiff. Moreover, plaintiff fails to show how Dr. Levine's opinion was inconsistent with any underlying objective clinical evidence or show that the opinion is otherwise unsupported. The court finds no error in the ALJ's determination that Dr. Levine's opinion as a orthopedic specialist should be accorded great weight.

Similarly, the court finds that the decisions to discount the opinion of Dr. Jones, and give only limited credibility to the plaintiff, were not erroneous. The ALJ first noted the very significant extent of the plaintiff's claimed restrictions. She could not, she alleged, walk for a single block or lift ten pounds. She could stand for no more than 45 minutes, and could only sit for the same amount of time. She claimed she had blurry vision and memory problems, and has to lie down for up to six hours each day. She also

told the ALJ during the hearing that she has numbness in her fingertips which she "assum[es]" is related to "the pinched nerves." (Tr. 53). She has not told Dr. Jones about this. *Id.*

However, as the ALJ noted, there is no medical evidence to support the claim of blurred vision or memory problems. Garrett also reported daily living activities generally inconsistent with the extent of her claimed restrictions (Tr. 26), including serving as caretaker for an invalid mother from 2006 to 2010. The medical record further indicated limited or conservative treatment for the plaintiff.

The record also supports the decision to discount the weight assigned to Dr. Jones's 2014 opinion that Garrett was disabled. The ALJ ultimately concluded that "[t]he lumbar spine MRI findings are minimal, and Dr. Jones's examinations have been consistently benign." (Tr. 26). Further, the 2014 medical source opinion offered by Jones was not grounded on objective medical evidence and did not offer "explanation or support" for the conclusion. (*Id.*)

This is a fair assessment of the record. Writing earlier in her opinion, the ALJ documented the limited nature of Dr. Jones's findings and treatment:

> Dr. Jones's physical examination findings have been fairly normal and routine. Although the claimant has at times exhibited lumbar tenderness and mildly reduced lumbar motion due to pain, Dr. Jones has consistently observed normal strength of the lower extremities, intact sensation to light touch, no evidence of numbness or tingling in the feet, normal deep tendon reflexes, negative straight leg raises, no evidence of neurological loss, a normal gait, and normal spinal alignment. In July 2012, the claimant showed no tenderness to percussion, and in July 2013, she was able to flex over and touch her toes. The claimant has consistently denied radicular symptoms, which is inconsistent with her testimony of regular shooting pain down her legs. Her treatment has been conservative,

consisting of narcotic pain medications and muscle relaxers prescribed by Dr. Jones. During the relevant period, there is no evidence the claimant has been prescribed an assistive device for ambulation, referred to physical therapy or a pain clinic, or undergone epidural steroid injections or nerve blocks; nor has the claimant required hospitalization or been considered a surgical candidate for her back pain.

(Tr. 25) (record citations omitted).

The plaintiff stresses in her brief that her visits to Dr. Jones occurred "over the course of a decade." (Dkt. 9, at 9). However, it appears that Garrett usually went some six months between visits. And, as the ALJ noted, the objective results documented in these visits were limited. Typically, Dr. Jones recorded in his notes what Garrett told him, with a few additional observations of his own.

On May 17, 2006, according to Dr. Jones's notes, Garrett reported with chronic back pain. However, there was "[n]o evidence of spondylitis on prior evaluations. She continues to have good range of motion of her back. There is no evidence of neurologic deficit." (Tr. 271). On November 17, 2006, Garrett again noted there was "[n]o evidence of neurologic loss." (Tr. 270).

On June 25, 2008, Dr. Jones noted that Garrett visited "with complaints of increased low back pain." (Tr. 268). Dr. Jones found that Garrett presented an antalgic gait, some reduced range of motion, and tenderness. Her spinal alignment was normal and she had normal motor strength. On December 31, 2008, Dr. Jones reported finding "no back tenderness to palpation," "normal alignment," and "good range of motion." (Tr. 267).

9

In 2009, Dr. Jones reported that Garrett could flex and touch her toes, and had "good lateral flexion." (Tr. 263). He found tenderness in her lower back, but also reported:

> Her deep tendon reflexes, motor strength, light touch exam are normal. She has normal straight leg raising to nearly 90 degrees. There is excellent range of motion of her hips and knees…. The neck has excellent range of motion.

*Id.*

In early 2010, Dr. Jones noted Garrett's statement of increased pain in her neck area, but found there was "no popping or crepitance of her neck." (Tr. 262). He again detected tenderness, on this occasion in the posterior lateral muscles and the left trapezius. At the same time, he found "no adenopathy about her neck," and "no evidence of neurologic loss other than a subjective numbness." *Id*. Her motor strength was again normal.

Dr. Jones recorded similar assessments up to 2014. (Tr. 256-60). In July, 2011, he reported that Garrett exhibited tenderness in the lower spine, but that "[t]here is no neck discomfort" and "no neurologic symptom to her lower extremities." (Tr. 258). Her reflexes and motor strength were normal. A year later, he found no tenderness and a normal gait, and normal reflexes. (Tr. 256). The examinations in January of 2011 and 2012 focused on problems Garrett reported as to breathing and hearing, and include no extensive observations regarding her back or spine. (Tr. 257, 259). In early 2013, Dr. Jones reported that his examination detected "twinges of pain involving her low back with certain movements." (Tr. 355). At the same time, Garrett exhibited

> good lateral flexion to the right and left. The deep tendon reflexes in the knees and ankles are normal. She has normal light touch sensation and motor strength of the lower extremities. There is good alignment of her back. She is able to flex to where her fingertips are about 3 inches above the floor. She is tender with movement and only slightly to palpation or percussion. Her gait is normal although antalgic secondary to low back pain.

*Id.*

As a general rule, an ALJ must consider and weigh all medical opinions. *See* 20 C.F.R. § 404.1527(b)-(c) (stating that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive."). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Social Security regulations identify three types of "acceptable medical sources:" (1) treating sources, i.e., medical sources who have treated or evaluated the claimant or who have had "an ongoing treatment relationship" with the claimant; (2) non-treating sources; i.e., medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) non-examining sources, i.e., medical sources who render an opinion without examining the claimant. *See* 20 C.F.R. § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011). The Commissioner generally gives more weight to the opinions of examining sources than to opinions of non-examining sources.

20 C.F.R. § 404.1527(c)(1). The Commissioner will give the opinion of a treating source controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). An ALJ must state "specific, legitimate reasons" for declining to give controlling weight to the opinion of a treating physician. *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).

Absent assigning controlling weight, an ALJ must consider the six specific factors set out in 20 C.F.R. § 404.1527(c)(1)-(6) in determining how much weight to accord the opinion of a treating physician. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted). Although there is no requirement that an ALJ conduct a factor-by-factor analysis, his opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation and quotation marks omitted). When an ALJ completely rejects an opinion of a treating source, he must state specific and legitimate reasons for the decision. *Watkins*, 350 F.3d

at 1300. Failure to apply the correct legal standards in weighing the opinion of a treating physician may result in a reversal and remand. *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995).

Applying these standards, the court finds no error in ALJ Sybrant's evaluation of the evidence supplied by Dr. Jones and Dr. Levine. The opinions and testimony of Dr. Levine was well grounded in the record and supports the RFC adopted by Judge Sybrant. Conversely, the ALJ had valid reasons for granting the medical source statements of Dr. Jones, which advocated a level of impairment which is not documented in the treatment records and is in conflict with the conservative treatment history of the plaintiff. The ALJ did not discount Dr. Jones's medical source statement because it was in checkbox format, but because the opinions he expressed were not grounded in the treatment history.

Similarly, the court finds it was not error to conclude that the plaintiff was not fully credible. As previously noted, the plaintiff claimed impairments which were not documented in the record, including blurred vision, memory loss, and numbness in her fingers. In addition, at the hearing the plaintiff claimed an extreme level of impairment which was in conflict her history as a caregiver for her mother.

Finally, the court finds it was not erroneous for the ALJ to consider but ultimately give little weight to the third-party statements submitted on behalf of the plaintiff. The ALJ explicitly considered letters of seven friends and family members of the plaintiff pursuant to S.S.R. 06-03p, finding that these "other source" statements gave "little helpful insight" into Garrett's condition, as each "describe[d] the claimant's

character traits and some of her life incidents as viewed through the eyes of each writer." (Tr. 26).

An additional letter by Pam Moore, RN, was given no weight by the ALJ. The ALJ accurately noted that Ms. Moore, the plaintiff's best friend, provided no objective observations or information or supplied any medical information. The letter was merely a "subjective presentation" without "dates or timeframes." (Tr. 26). This was not error. Moore simply described her personal history with the plaintiff, and wrote that Garrett "is just not able to do all the fun things we did before." (Tr. 363).

IT IS THEREFORE ORDERED this 28th day of September, 2017, that the judgment of the Commissioner is affirmed.

                                      ___s/ J. Thomas Marten___
                                      J. Thomas Marten, Judge